JUSTICE GRAY
dissenting.
I respectfully dissent from the opinion of the Court. I would reverse the District Court.
My disagreements with the Court are two. First, the Court does not address the District Court’s threshold determination that the Trustees waived their objection to consideration of post-termination information by the County Superintendent. I would reverse the District Court on this issue because it is my view that the Trustees made a sufficient and, indeed, legally correct objection to the relevance of that information. While the record can be read narrowly to support the District Court’s determination that no “objection” stated in such terms was made, I would read the record before us more generously under these circumstances where neither party raised or briefed the “objection/waiver” issue in the District Court.
It seems to me that a fair reading of the record indicates that the parties agreed to allow all the post-termination evidence into the record for purposes of the County Superintendent’s hearing subject to objections in their post-hearing briefs. The Trustees then argued in their brief that the school district was unaware of what the reserve *344 fond level ultimately would be at the time they were compelled to make their termination decision; in essence, I read that to be an objection to the post-termination evidence on relevance grounds. Certainly it appears that the parties so understood matters to and through the subsequent proceedings in the District Court during which Phillips did not raise an issue with regard to any waiver by the Trustees. For these reasons, I would reverse the District Court’s determination that the Trustees failed to object and thereby waived their right to object to use of the post-termination evidence.
Second, the Court’s total lack of discussion of the significant issue before us for the first time in this case — namely, whether such post-termination evidence can be used by a county superintendent in reviewing a termination decision made by school district trustees — is troubling. While that discussion is ably provided in Justice Nelson’s concurrence, the formal Court opinion is devoid of legal analysis of the issue.
On the merits of that critical issue — whether evidence not in existence at the time of the Trustees’ decision can be used in reviewing that decision — I also disagree with the Court. The Court correctly states that hearings before a county superintendent of the kind at issue here are de novo hearings. The Court then proceeds to a conclusion that, because the hearing is de novo, any relevant issues of law or fact before the County Superintendent could be reviewed as if the Trustees’ decision had never taken place. I agree with that conclusion as well. The crux of the issue, though, is precisely that raised by the Trustees — is evidence regarding the financial circumstances of the school district which did not exist at the time of the Trustees’ decision “relevant” in reviewing that decision? The Court seems to conclude that it is, without specifically so stating and without discussion or citation to authority. I disagree.
It is my view that post-termination evidence — that is, evidence which did not exist at the time a termination decision was statutorily required — is not relevant and, therefore, cannot be used by a county superintendent in reviewing a termination decision. While a county superintendent’s hearing is de novo under our interpretations of § 20-3-210, MCA, that conclusion does not mandate or even suggest a conclusion that “facts” which did not exist at the time of the decision are relevant. The Trustees must act within statutory time frames and they must act based on information available at that point in time. To suggest that a decision made on the only information available properly can be reviewed at a later time by either the county super *345 intendent, the state superintendent, or any court, based on an entirely different informational and evidentiary basis is without logic and puts school trustees in an untenable position.
Sections 20-3-210(1) and (3), MCA, provide in pertinent part:
[T]he county superintendent shall hear and decide all matters of controversy arising in the county as a result of decisions of the trustees of a district in the county.
The county superintendent shall hear the appeal and take testimony in order to determine the facts related to the controversy.
The “controversy” before the County Superintendent in this case was the validity of the Trustees’ decision to terminate Phillips. Section 20-3-210(3), MCA, authorizes the County Superintendent to determine the “facts related to” that controversy. The related facts, I submit, can be only those which existed at the time the controversy came into existence, namely, the facts which existed and which were available to the Trustees at the time they made their decision. To hold that later-existing “facts” relate, and thus are relevant, to an earlier decision, is to graft into substantive Montana law the kind of hindsight which each of us always hopes will not be used to judge our personal or professional decisions. I cannot agree.
JUSTICE WEBER concurs in the foregoing dissent.